**FILED**
**Dec 14, 2023**
**03:07 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| **CHARLES MELTON,** | ) | **Docket No. 2022-07-0197** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 40311-2021** |
| | ) | |
| | ) | |
| **LOWE'S HOME CENTERS, INC.,** | ) | **Judge Robert Durham** |
| **Self-Insured Employer,** | ) | |

---

## COMPENSATION ORDER GRANTING BENEFITS

---

The Court held a Compensation Hearing on November 30, 2023, to determine whether Mr. Melton provided statutory notice of a compensable left knee injury, and if so, to which benefits he may be entitled. The Court holds Mr. Melton gave adequate notice and established entitlement to past and future medical benefits as well as temporary total and permanent partial disability benefits.

### History of Claim

Mr. Melton began working for Lowe's in March of 2020. He testified that some months before April 13, 2021, he developed left knee pain that he attributed to repetitively lifting, carrying, and stacking various heavy materials at work. Although he had pain, it did not prevent him from performing his duties, and he did not seek treatment. He said he could not recall having knee pain before working for Lowe's.

Mr. Melton spent the morning of April 13 getting on and off a forklift and loading customers' vehicles with items such as concrete border blocks and bags of mulch. At one point, he jumped off his forklift and felt a "pop" in his left knee as he landed that caused intense pain. He hobbled to his supervisor, Bill Arnhold, and told him that he needed treatment. Mr. Arnhold told him to go to the doctor.

The next day, Mr. Melton saw nurse practitioner Darren Perry, who referred him for x-rays and an orthopedic evaluation. Mr. Melton asked Mr. Arnhold the next day for a

1

leave of absence.

Mr. Melton filed a claim for short-term disability benefits on May 12, and NP Perry completed a form stating that Mr. Melton's knee started hurting due to "repetitive tasks involving squatting, sitting, and bending at the knee." The form did not include a description of the April 13 incident. Mr. Melton received disability checks from May 28 until October 15 totaling $10,788.00.[1]

He also filed a workers' compensation claim, and Mr. Arnhold completed a First Report of Injury on May 13 describing the forklift incident. Lowe's denied the claim, stating that Mr. Melton's knee complaints were preexisting and non-work related.

Ultimately, Mr. Melton saw orthopedist Dr. Darren Knight, who eventually performed an unauthorized partial knee replacement. Lowe's later terminated Mr. Melton because he was a "no-call, no-show" for three days in a row. However, Mr. Melton testified he was unable to work from the date of injury until Dr. Knight determined he was at maximum medical improvement in January. He eventually found work in October 2022 making more money than he made at Lowe's.

On cross-examination, Mr. Melton said he did not remember telling NP Perry that his knee pain had been gradually building up for a year or that he suffered from joint pain before his injury, although he would not dispute NP Perry's record if it said that. He admitted that NP Perry's records did not mention the forklift incident, but he said that was because NP Perry told him he would not treat a workers' compensation patient. He did not remember saying that he had been suffering from pain for two years, although he could have been referring to arthritic pain in his hands. He also denied having any right knee problems.

Mr. Arnhold confirmed that Mr. Melton's job involved repetitive lifting and carrying as well as driving a forklift. He recalled that Mr. Melton told him on April 13 that he hurt his knee getting down from the forklift. He said that around a week later, Mr. Melton said he needed to see a doctor and requested that Lowe's file a workers' compensation claim.[2]

Mr. Melton offered Dr. Knight's deposition, who testified that he saw him on May 5 for left knee pain. X-rays revealed arthritis in both knees, but Mr. Melton only complained of his left, so Dr. Knight diagnosed left knee arthritis. He did not observe any

---

[1] The parties agreed that if the injury were compensable, Lowe's is entitled to an offset against temporary disability benefits in this amount.

[2] Mr. Melton and Mr. Arnhold testified at length about his termination and whether he could have returned to work. However, the Court does not need to summarize this testimony, having held that Mr. Melton was temporarily totally disabled through maximum medical improvement and he found another job that paid more than Lowe's before the initial compensation period ended.

acute injury. Mr. Melton told him at this visit that he had "progressively worsening symptoms" that he attributed to his "particular job description from a standing, squatting, stair-climbing perspective that just gradually began to bother his knee more and more over time." Mr. Melton reported he had experienced pain for a year.

After conservative treatment failed, Dr. Knight performed a partial knee replacement on July 8, 2021. The parties agreed that Mr. Melton reached maximum medical improvement on January 1, 2022.

As for causation, Dr. Knight said to a reasonable degree of medical certainty that Mr. Melton's employment with Lowe's more likely than not contributed more than fifty percent in causing or aggravating his knee injury as well as his need for partial knee replacement. Further, while he agreed Mr. Melton had preexisting arthritis, he believed the severity shown on x-ray was unusual. Thus, he felt Mr. Melton's job duties did not cause structural damage but "exacerbated the disease process" to the point that his symptoms were uncontrollable and surgery was necessary.

Dr. Knight confirmed that Mr. Melton was unable to work from the time of his surgery through January 22, 2022.[3] He also said that his treatment was necessary due to the work injury. At his deposition, Dr Knight assessed a zero percent impairment. However, he later revised his opinion through a C-30A and assigned a ten percent impairment.

Mr. Melton also submitted the deposition of orthopedist Dr. Jason Hutchison, who performed an employer's evaluation. He testified that Mr. Melton reported generalized, sharp, knee pain for a year due to constantly, walking, bending, and squatting at Lowe's. He further said that these symptoms demonstrably worsened on April 13, 2021, when he jumped off a forklift and felt his knee pop.

Regarding questions about NP Perry's note that Mr. Melton reported knee pain for two years before his accident, Dr. Hutchison said:

> If this gentleman was having significant knee pain for two years and just finally had enough while working at Lowe's on this particular day, then his knee pain is not work-related, and I can say that to a reasonable degree of medical certainty.

> However, on the other hand, if this gentlemen had some low-grade knee pain, which he wasn't going and seeking treatment and maybe took an occasional Aleve for and was able to carry on a normal life both at work and outside of

---

[3] Although Dr. Knight testified Mr. Melton could not return to work until January 22, 2022, the parties agreed that Mr. Melton reached maximum medical improvement on January 1, 2022.

work and then he jumps off a forklift and something happens, causing him to stop working and change his whole life around that acute event, then I would say to a reasonable degree of medical certainty that the work injury did cause that change.

He said that, based on everything he knew, he agreed with Dr. Knight that Mr. Melton's left knee injury and the need for a partial knee replacement were due to the April 13 work activities. However, he said his causation opinion depended on Mr. Melton's credibility.

Lowe's questioned Dr. Hutchison about NP Perry's notes that said Mr. Melton had suffered from left knee pain for two years. This was one year more than he worked at Lowe's, and the notes said that Mr. Melton did not suffer an acute event. Dr. Hutchison said that NP Perry explained this discrepancy by telling Mr. Melton that NP Perry refused to treat work-related injuries. Thus, they agreed to not mention the work accident so that Mr. Melton's health insurance would pay for it. Dr. Hutchison found this to be a reasonable explanation. As for impairment, Dr. Hutchison agreed with Dr. Knight's ten percent rating.

Finally, Lowe's submitted the deposition of physiatrist Dr. Jeffrey Hazlewood, who gave a causation opinion after a records review. Based on Mr. Melton's original x-rays, Dr. Hazlewood said Mr. Melton suffered from mild and essentially equal arthritis in both knees. He did not see any signs of an acute injury on the x-rays or the left knee MRI, but he described the left medial compartment arthritis as "severe" but chronic.

Dr. Hazlewood also did not observe any anatomic change in the records after the alleged April 13 incident. He believed Mr. Melton's arthritis significantly pre-dated the April 13 event and that an increase in pain from stepping off the forklift was a subjective response and not an objective anatomical aggravation.

As for causation, Dr. Hazlewood said that scientific literature states that the only occupational risk factor for developing arthritis if is the employee sustained a work-related meniscal tear or perhaps a severely dislocated patella. Work activities, such walking, standing, squatting, or climbing, do not contribute to the development of knee arthritis. Instead, Mr. Melton's arthritis is more likely attributable to his age and possibly genetics. Thus, he believed Mr. Melton's arthritis was not primarily related to his employment.

Further, Dr. Hazlewood believed Mr. Melton's treatment was due to his preexisting degenerative condition and not to his alleged work-related injury. He based this opinion not only on diagnostic findings and scientific literature, but also on the different accounts in Mr. Melton's medical records as to when his symptoms began, and the fact that Mr. Melton did not describe a work-related incident in his initial visit to NP Perry.

4

**Findings of Fact and Conclusions of Law**

Mr. Melton has the burden of proving the essential elements of his workers' compensation claim by a preponderance of the evidence. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). Here, several issues are disputed, but they all hinge on whether Mr. Melton gave sufficient notice and suffered a compensable left knee injury on April 13, 2021. The Court finds that Mr. Melton proved he did and is entitled to his requested benefits.

*Notice*

Lowe's argued that Mr. Melton did not notify it within fifteen days of his alleged accident as required by Tennessee Code Annotated section 50-6-201 (2023). Since the undisputed evidence established that Mr. Melton told Mr. Arnhold about suffering from knee pain due to getting off the forklift the day that it occurred, notice only becomes an issue if Mr. Melton's injury was due to "gradual or cumulative events or trauma." Tenn. Code Ann. § 50-6-201(c).

In that case, notice is required within fifteen days of after the employee:

(1) knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or (2) Is rendered unable to continue to perform the employee's normal work activities as a result of the work-related injury and the employee knows or should know that the injury was caused by work-related activities.

The undisputed evidence is that Mr. Melton did not seek treatment for knee pain and receive a diagnosis of arthritis before April 13, nor was he unable to perform his full duties at Lowe's until that date. The testimony established that Mr. Melton notified Mr. Arnhold on the day of his injury that he experienced disabling left knee pain when stepping off his forklift. He also asked Mr. Arnhold to file a workers' compensation claim and provide medical treatment a week later. Thus, the Court holds that Mr. Melton gave notice in compliance with the statute.

*Causation*

To prove causation, Mr. Melton must show to a reasonable degree of medical certainty that he suffered an accidental injury due to a "specific incident, or set of incidents, that arose primarily of and in the course and scope of employment and is identifiable by time and place of occurrence. The definition also includes an aggravation of a preexisting disease or condition so long as the aggravation arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(12)(A).

The injury or aggravation must have "contributed more than fifty percent" in causing his disablement and need for treatment. *Id.* at -102(12)(C). "Reasonable degree of medical certainty" means "it is more likely than not considering all causes, as opposed to speculation or possibility." *Id*. at -102(12)(D). Proving all this requires expert medical opinion. *Id*.

Here, three experts testified about the cause of Mr. Melton's disabling arthritis. When weighing expert opinions, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A, Inc.*, 2017 TN Wrk Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017). None of the doctors was an authorized treating physician, so none of their causation opinions is rebuttably presumed correct. Tenn. Code Ann. § 50-6-102(12)(E).

Dr. Knight treated Mr. Melton several times and eventually performed surgery. He said Mr. Melton suffered progressively worsening symptoms due to the physical demands of his job at Lowe's and surgery became necessary. Despite the lack of an acute injury, Dr. Knight testified within a reasonable degree of medical certainty that Mr. Melton's job at Lowe's contributed more than 50 percent in causing his knee injury or an aggravation that necessitated knee replacement surgery.

The Appeals Board has previously held that repetitive trauma sustained in the regular course of work activities over time may constitute a "set of incidents" as set out by statute. *Ibarra v. Amazon Fulfillment Serv., Inc.*, 2020 TN Wrk. Comp. App. Bd. LEXIS 13, at *5 (Apr. 1, 2020). Proof of a "single, sudden event" is not necessary so long as the employee can prove a "compensable set of incidents over an identifiable period of time." *Id*. Thus, the Court holds that Dr. Knight's testimony sufficiently establishes causation under section 50-6-102.

Dr. Hutchison saw Mr. Melton personally for an employer's evaluation and questioned Mr. Melton thoroughly on the issue of causation. He said that if Mr. Melton only suffered from occasional "low grade knee pain" that did not significantly limit his activities or require medical treatment before April 13, but jumping off the forklift changed his condition so that he immediately suffered disabling knee pain, then the work injury primarily caused his injury and need for a knee replacement. As with Dr. Knight, the Court finds that Dr. Hutchison's opinion establishes causation under section 50-6-102.

Both doctors maintained their causation opinions despite the absence of anatomic change or objective evidence of an acute injury. The Appeals Board has held that a preexisting condition made symptomatic by a work injury may be compensable without an anatomic change "if there is a progression or aggravation of the condition that causes disabling pain." *Blevins v. S. Champion Tray, LP,* 2019 TN Wrk. Comp. App. Bd. LEXIS

29, at \*14 (July 11, 2019). Further, the fact that Mr. Melton's initial records did not include the forklift incident did not alter their opinions. Dr. Hutchison specifically said that he considered Mr. Melton's explanation that NP Perry refused to treat workers' compensation claims to be reasonable.

On the other hand, Dr. Hazlewood, who performed a record-review evaluation, found NP Perry's records and Mr. Melton's description of preexisting knee pain significant. When asked about causation and arthritis, he said that unless an employee suffers an acute, objective injury, such as a meniscal tear or patellar dislocation, arthritis, or the need for treatment of it, cannot be primarily due to employment, even if the employee only became symptomatic after a traumatic event. Thus, he would not attribute either NP Perry's arthritis diagnosis or the need for a knee replacement to Mr. Melton's employment.

The Court finds that Dr. Hazlewood's record review and generalized opinion on arthritis and causation insufficient to overcome the causation opinions of Drs. Knight and Hutchison.

However, the opinions of Drs. Knight and Hutchison hinge on Mr. Melton's credibility. The issue remains as to whether Mr. Melton's assertions that he did not suffer from knee pain before working at Lowe's and that the pain was not disabling until he jumped from the forklift are credible. If not, then his claim must fail.

Mr. Melton told the doctors that he did not have knee pain before working at Lowe's in March 2020 and did not suffer disabling knee pain before April 13. However, NP Perry's records contain a statement that Mr. Melton's knee pain gradually progressed over two years, one year longer than he worked at Lowe's, and he did not mention the forklift incident.

Regarding the "two years" comment, Mr. Melton said he could not remember saying that, but if he did, he may have been referring to his hand arthritis. As for the forklift incident, Mr. Melton said he did not reference it because he thought NP Perry would not treat him. However, Mr. Melton did immediately report the forklift incident to Mr. Arnhold, his supervisor. Mr. Arnhold also testified that while he saw Mr. Melton exhibit some signs of knee pain during busy days the previous summer, Mr. Melton remained a hard worker and performed all his duties without restriction before April 13. The Court finds Mr. Arnhold's testimony credible and supportive of Mr. Melton's testimony.

After careful consideration, the Court finds that statements made by Mr. Melton to Drs. Knight and Hutchison are credible and their opinions are reliable. Thus, the Court holds that Mr. Melton proved that his disabling arthritic pain and need for partial knee replacement were primarily caused by his April 13 work injury.

*Medical Benefits*

Since Mr. Melton proved that he suffered a compensable left knee injury, the Court now addresses benefits. Whether an employee is justified in seeking payment for unauthorized medical expenses from an employer depends upon the circumstances of each case. *Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016). Because Lowe's denied Mr. Melton's claim, he reasonably sought treatment with Dr. Knight. Dr. Knight eventually performed a partial knee replacement, and testified his treatment was necessary for Mr. Melton's work injury. Dr. Hutchison agreed with this opinion.

The Appeals Board has stated, "An employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice." *Hagan v. Potomac Corp.*, 2022 TN Wrk Comp. App. Bd. LEXIS 5, at *10 (Feb. 9, 2022). Thus, the Court holds that Lowe's shall pay for the reasonable and necessary care by Dr. Knight for Mr. Melton's work injury. The expenses shall be paid at the applicable medical fee schedule under Tennessee Code Annotated section 50-6-204(a)(3)(A)(iii). Further, Dr. Knight shall be the authorized doctor for any future treatment. *Id*.

*Temporary Disability Benefits*

The Court next considers temporary total disability benefits.[4] Mr. Melton must prove: (1) disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

Dr. Knight testified that he took Mr. Melton off work from July 8, 2021, the date of surgery, through at least January 1, 2022, the date of maximum medical improvement. Lowe's did not offer any contrary expert medical testimony, and Mr. Melton testified he did not work during this period. The period of temporary total disability ends when the employee reaches maximum medical improvement or returns to work. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).

Thus, the Court holds that Lowe's shall pay Mr. Melton temporary total disability benefits from July 8, 2021, through January 1, 2022, in the amount of $15,533.77, less $10,788.00 Lowe's already paid in short-term disability benefits, for a net sum of $4,755.77. Mr. Melton did not introduce medical evidence to prove entitlement to temporary benefits before his surgery.

---

[4] The parties agreed to a compensation rate of $614.33.

*Permanent Partial Disability Benefits*

Dr. Knight and Dr. Hutchison assigned Mr. Melton a permanent impairment of ten percent under the AMA Guides to the Evaluation of Permanent Impairment, 6th edition. Under Tennessee Code Annotated section 50-6-207(3)(A), this equates to 45 weeks of benefits at a compensation rate of $614.33 for a lump sum payment of $27,644.85. Mr. Melton's initial compensation period expired on November 12, 2022, and at that time he had returned to work for another employer making better pay than before his injury. Thus, he is not entitled to increased benefits.

IT IS, THEREFORE, ORDERED:

1. Lowe's shall pay Mr. Melton an award of temporary total disability benefits in the amount of $4,755.77 and permanent partial disability benefits in the amount of $27,644.85, for a lump sum award of $32,400.62.

2. Mr. Johnson's counsel shall receive an attorney's fee of twenty percent of the award, or $6,480.12. Mr. Johnson's counsel may also file a motion and affidavit for discretionary costs.

3. Dr. Darren Knight shall remain Mr. Melton's treating physician for his work-related left knee injury. Lowe's shall pay for reasonable, necessary, and related medical treatment for this injury.

4. Lowe's shall pay costs of $150.00 to the Court Clerk within five business days of this order.

5. Lowe's shall prepare and file with the Court Clerk a Statistical Data Form within ten business days of this order becoming final.

6. Unless appealed, this order becomes final in thirty days.

**ENTERED December 14, 2023.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

9

## APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Transfer Notice
4. Mr. Melton's Witness and Exhibit List
5. Mr. Melton's Pre-Trial Brief
6. Lowe's Witness and Exhibit List
7. Lowe's Pre-Trial Brief
8. Pre-Compensation Hearing Statement

Exhibits:
1. Dr. Hutchison's deposition with attached exhibits
2. Dr. Knight's deposition with attached exhibits
3. Dr. Hazlewood's deposition with attached exhibits
4. Wage Statement
5. Short Term Disability Payments Summary
6. First Report of Injury
7. Disability Form Statement
8. Dr. Knight's Causation Letter
9. Lowe's Denial Letter
10. Termination Letter
11. Dr. Hazlewood's IME Report

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on December 14, 2023.

| Name | Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Spencer Barnes | | | X | spence@morrisonandbarnes.com |
| W. Troy Hart | | | X | wth@mijs.com |
| Tiffany Sherrill | | | | tbsherrill@mijs.com |

_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____        ☐ Motion Order filed on _____

☐ Compensation Order filed on_____        ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

        Page **1** of **2**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*